# EXHIBIT A

## Settlement Agreement
## and
## Release of Claims

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RYAN LANG, on behalf of himself and all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | CA No. 7:18-cv-00077-BO |
| v. | ) ) | |
| DUPLIN COUNTY, | ) ) | |
| *Defendant.* | ) | |

## SETTLEMENT AGREEMENT OF FLSA COLLECTIVE ACTION AND RELEASE OF CLAIMS

This Settlement Agreement of Collective Action and Release of Claims is entered into by Plaintiff, Ryan Lang, individually and as representative of the Participating FLSA Collective Members, as defined below, and Defendant, Duplin County. This Agreement is subject to approval by the United States District Court for the Eastern District of North Carolina Southern Division and is made for the sole purpose of consummating the settlement of this Action on a collective basis subject to the following terms and conditions. As detailed below, in the event the Court does not enter an order granting approval of the Settlement in substantially the same form and substance set forth below, the Court's order granting approval of the Settlement is appealed and reversed, or the conditions precedent are not met for any reason, this Settlement is void and of no force whatsoever.

## I.  <u>DEFINITIONS</u>

1.  **Action.**  "Action" shall mean the civil action in Court, styled *Lang et al. v. Duplin County*, CA No. 7:18-cv-00077-BO.

2.  **Administrative Costs.**  "Administrative Costs" means the amount to be paid from the Gross Settlement Fund to a third-party or settlement administrator for all costs in connection with consummating the terms of this Agreement as set forth in Article VI, Section 8.

3.  **Collective Counsel.** "Collective Counsel" shall mean the Law Offices of Gilda A. Hernandez, PLLC.

4.     **Collective Counsel Fees and Expenses.** "Collective Counsel Fees and Expenses" shall mean Plaintiffs' Counsel's attorneys' fees, costs, and expenses as set forth in Article IV, Section 4 (Settlement Consideration – Collective Counsel Fees and Expenses).

5.     **Collective Members.** "Collective Members" shall mean the 66 FLSA Collective Members who have filed consents to join this Action.

6.     **Complaint.** "Complaint" shall mean the Collective Action Complaint filed in the Court on May 11, 2018 in this Action.

7.     **Court.** "Court" shall mean the United States District Court for the Eastern District of North Carolina, Southern Division.

8.     *Cy Pres* **Amount.** "*Cy Pres* Amount" shall be the amount associated with any checks sent to Participating FLSA Collective Members that remain uncashed 180 days after mailing.   The *Cy pres* recipient for any such uncashed amounts will be the Duplin County Parks and Recreation.

9.     **"Defendant" or "Duplin County"** shall mean Duplin County, named party to this Action.

10.     **Defendant Releasees.** "Defendant Releasees" shall include Defendant and each of its officers, directors, members, partners, owners, shareholders, employees, former employees, agents, servants, attorneys, assigns, and affiliates.

Case 7:18-cv-00077-BO   Document 74-2   Filed 11/25/19   Page 4 of 29

11.     **Defense Counsel.** "Defense Counsel" shall mean Crossley McIntosh Collier Hanley & Edes, PLLC.

12.     **Effective Date.** "Effective Date" means the date the Court enters an Order approving this Settlement and/or dismissing the Lawsuit.

13.     **Gross Settlement Amount.** "Gross Settlement Amount" means the total gross amount to be paid by Duplin County to settle the Released Claims and the additional claims released by the Participating FLSA Collective Members (*see* Article IV, *infra*), along with Collective Counsel Fees and Expenses, Service Award, and Costs of Administration, up to a maximum of $495,000.00. In no event shall Defendant be required to pay any amount beyond the Gross Settlement Amount.

14.     **Individual Settlement Amounts.** "Individual Settlement Amounts" shall mean the amount distributed to each Participating FLSA Collective Member, in exchange for the release of their FLSA claims, and the other promises and covenants made herein.

15.     **Injunctive Relief.** "Injunctive Relief" refers to Defendant Duplin County's Change in pay practice, as described in ¶ 1 of Section V below. Specifically, Defendant Duplin County will change its overtime pay practices with respect to all full-time Emergency Medical Personnel, including, but not limited to, Paramedics, Emergency Medical Technicians – Basic, and Emergency Medical

Technicians – Intermediates, to pay in a manner that counsel for the parties have reviewed and agreed complies with all requirements of the Fair Labor Standards Act. Defendant's Counsel represents to the Court that the Defendant County has authorized and directed its Finance Department to change to paying the workers at issue on an hourly basis, with overtime pay for all hours worked in excess of 40 in a workweek, effective with the pay period beginning on December 21, 2019.

16. **Net Settlement Amount.** "Net Settlement Amount" means the remainder of the Gross Settlement Amount after deductions for Collective Counsel Fees and Expenses, Service Award, along with the Costs of Administration.

17. **Participating FLSA Collective Members.** "Participating FLSA Collective Member" means an FLSA Collective Member who submitted a timely and valid Consent Form during the initial period to Collective Counsel, which expired on July 17, 2019.

18. **Parties.** "Parties" shall mean Plaintiffs and Defendant.

19. **Plaintiffs.** "Plaintiffs" shall mean Named Plaintiff Ryan Lang and all FLSA Collective Members who opted into the action through the opt-in deadline or July 17, 2019 in this Action.

20. **Collective Member Information.** "Collective Member Information" shall mean a password protected CD-ROM or DVD disc marked "Confidential-Collective Counsel's Eyes Only" that Defense Counsel provides, which includes

any updated contact information previously produced for only those Collective Members who timely submitted their consent form prior to the opt-in deadline or July 17, 2019. Such information will be provided in an electronic, encrypted spreadsheet containing the following information on each FLSA Collective Member: (1) his or her name; (2) last known address; (3) last known telephone number; (4) email address; and (5) start and end dates for each period the Collective Member was employed by Defendant within the collective period; and

21. **Released Claims.** "Released Claims" means any and all claims against the Released Parties related to the subject matter of the Action, that were or could have been asserted in the Action based on putative violations of any federal, state or local laws pertaining to overtime wages, meal or rest periods, and any other purported Fair Labor Standards Act violation, based on events that occurred or are alleged to have occurred while each FLSA Collective Member served as an EMT from May 11, 2015 through the Effective Date.

22. **Released Parties.** "Released Parties" means Defendant Duplin County, and each of its current and former officers, directors, agents, and representatives.

23. **Service Award.** "Service Award" shall mean any additional monetary payment provided to Named Plaintiff Ryan Lang for his efforts on behalf of the

FLSA Collective Members in this Action, as set forth in Article IV, Section 3 (Settlement Consideration – Plaintiff's Service Award).

24. **Settlement.** "Settlement" shall mean the Settlement between the Parties, which is memorialized in this Settlement Agreement.

25. **Settlement Administrator.** "Settlement Administrator" shall mean a third-party settlement administrator who will be responsible for consummating the terms of this Agreement as set forth in Article VI, Section 1.

26. **Settlement Agreement.** "Settlement Agreement" shall mean this Settlement Agreement of FLSA Collective Action and Release of Claims, including any attached exhibits.

## II. <u>RECITALS</u>

1. **The Procedural History of the Action**. Plaintiff Ryan Lang initiated the Action on May 11, 2018 in the Court. Defendant thereafter filed a Motion to Dismiss for Failure to State a Claim on July 13, 2018. *See* Dkt. No. 12. In response, Plaintiff filed an Amended Complaint curing deficiencies presented in Defendant's motion on July 25, 2018. *See* Dkt. No. 19.

Defendant then filed a new Motion to Dismiss for Failure to State a Claim on August 8, 2018; and an Answer to the Amended Complaint on September 6, 2019. *See* Dkts. No. 23, 30. Defendant subsequently filed a Motion for Partial Judgment on the Pleadings on January 3, 2019, seeking to dismiss Plaintiff's state law claims

Case 7:18-cv-00077-BO   Document 74-2   Filed 11/25/19   Page 8 of 29

against Defendant, which this Court subsequently granted on February 4, 2019. *See* Dkts. No. 35, 43.

2.      On March 28, 2019, Plaintiff moved both for leave to file a Second Amended Complaint, and for certification of a collective action pursuant to § 216(b) of the FLSA, which was unopposed by Defendant. *See* Dkts. No. 51, 52. This court granted both of Plaintiff's motions on April 5, 2019. *See* Dkts. No. 54, 55. Defendant then filed its Answer to Plaintiff's Second Amended Complaint on May 7, 2019. *See* Dkt. No. 59.

3.      **The Court Grants Plaintiff's Unopposed Motion for Conditional Collective Certification**. On April 5, 2019, the Court granted Plaintiff's motion for conditional certification and his motion for leave to file a Second Amended Complaint.

4.      **Notice, Forms, and Deadlines to Opt-in to Action.** In the same order, the Court also granted Plaintiff's proposed notice, including, but not limited to a ninety (90) day notice period for FLSA putative Plaintiffs to file Consents to File Suit as Plaintiffs. The opt-in period commenced on April 18, 2019 and expired on July 17, 2019. As of October 23, 2019, approximately 66 FLSA putative Plaintiffs, including Plaintiff Ryan Lang, have filed Consents to File Suit.

5.      **Settlement Negotiations and Mediation**. On September 27, 2019, the Parties participated in mandatory mediation whereby Plaintiff engaged in a damages

analysis pursuant to data produced by Defendant as part of the Parties' discovery obligations. Defendant produced weekly pay records, start and end dates, and other compensation data for every FLSA Collective Member, at that time. Plaintiff submitted a mediation statement to the mediator. The Parties attended mediation on September 27, 2019, before mediator Kenneth P. Carlson, Jr., at Collective Counsel's law offices in Cary, North Carolina. The mediation resulted in the Parties' Settlement Agreement.

6. **Collective Members and Individual Claims**. The Complaint alleges that Defendant has violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq, by: (1) maintaining a corporate policy of failing to compensate Plaintiffs for all hours worked; (2) underpayment and failure to lawfully compensate Plaintiffs at the appropriate straight and overtime rates and (3) violating statutory record-keeping provisions. In addition to unpaid wages, Plaintiffs also seeks liquidated damages, reasonable attorney's fees and costs, prejudgment interest, and other damages as permitted by law. Named Plainitff believes he and Collective Members have meritorious claims based on these alleged violations of federal law. Defendant has denied and continues to deny any liability to Named and Opt-in Plaintiffs and have raised various defenses to the claims.

7. **Discovery, Investigation, and Research**. Collective Counsel conducted an investigation into the facts during the prosecution of the Action. This

discovery and investigation has included, among other things (a) multiple meetings and conferences with Named Plaintiff; (b) inspection and analysis of documents produced by Named Plaintiff; (c) analysis of the legal positions taken by Defendant; (d) investigation into the viability of collective treatment of the claims; (e) analysis of potential collective-wide damages; (f) research of the applicable law with respect to the claims and potential defenses thereto; (g) inspecting and analyzing two banker boxes with thousands of hard copy documents for over one-hundred and fifty (150) putative plaintiffs produced by Defendant during discovery and prior to mediation; and (h) participating in multi-day negotiations with mediator Kenneth P. Carlson, Jr.

8. **Allegations of Named Plaintiff and Benefit of Settlement.** Named Plaintiff has vigorously prosecuted this case, and Defendant has vigorously contested it. The factual investigation conducted in this matter, and discussions between Collective Counsel and Defense Counsel, have been adequate to give Named Plaintiff and Collective Counsel a sound understanding of the merits of their positions and to evaluate the potential worth of the claims of the Collective. This Settlement was reached with the assistance of an experienced mediator, Kenneth P. Carlson, Jr., after arm's-length settlement discussions and extensive discovery to include discovery, depositions, and multiple discovery disputes, over a period of several months, culminating in a mediation and settlement between the Parties just weeks prior to the parties' dispositive motion deadline. The discovery conducted in

this Action and the information exchanged by the Parties are sufficient to reliably assess the merits of the Parties' respective positions and to compromise the issues on a fair and equitable basis.

Named Plaintiff and Collective Counsel believe that the claims allegations and contentions asserted in the Action have merit. However, Named Plaintiff and Collective Counsel also recognize and acknowledge the risk inherent in any litigation, as well as the expense and delay of continued lengthy proceedings necessary to prosecute the Action against Defendant through trial and appeals. Collective Counsel has taken into account the uncertain outcome of the litigation, the risk of continued litigation in complex actions such as this, as well as the difficulties and delays inherent in such litigation, and the potential difficulty of maintaining certification of the Action as well as trying the claims of the FLSA Collective. Collective Counsel is mindful of the potential problems of proof under, and possible defenses to, the claims alleged in the Action. Collective Counsel believes that this Settlement confers substantial benefits upon the Participating FLSA Collective Members and that an independent review of this Settlement by the Court in the approval process will confirm this conclusion. Based on their own independent investigation and evaluation, Collective Counsel has determined that the Settlement set forth in the Settlement Agreement is in the best interests of the FLSA Collective Members.

9. **Defendant's Denial of Wrongdoing and Liability**. Defendant has denied and continues to deny each and all of the claims and contentions alleged by Named Plaintiff in the Action. Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendant has agreed to settle the Action on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing litigation.

Therefore, in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties do hereby settle, compromise, and resolve any and all claims specified herein, except with respect to enforcement of this Agreement, as follows:

## III. APPROVAL OF SETTLEMENT AND DISMISSAL OF ACTION

1. **Cooperation.** The Parties agree to cooperate and take all steps necessary to accomplish and implement the terms of this Settlement Agreement.

2. **Fair, Adequate, and Reasonable Settlement.** The Parties agree that the Settlement is fair, adequate, and reasonable and will so represent to the Court.

3. **The Parties shall seek Court approval of this Agreement.** The Parties agree that Named Plaintiff will file with the Court, if possible no later than three (3) days following the date on which this Agreement is executed by all Parties, a motion for entry of the Approval Order. The motion shall be prepared by Collective Counsel.

4.     **Failure to Procure Approval.**   Approval of the Settlement by the Court is a material term of the Settlement Agreement. If the Court declines to enter an Approval Order, or an order granting approval to this Settlement, in substantially the same form as that submitted by the Parties, the Settlement Agreement shall become null and void, provided, however, that the Parties agree to work cooperatively and in good faith for a period of seven (7) calendar days following any denial or reversal of approval to address and resolve any concerns identified by the Court in declining to enter an Approval Order or an order granting approval to this Settlement.

## IV.   <u>SETTLEMENT CONSIDERATION</u>

1.     **Gross Settlement Amount.** Defendant Duplin County will pay the Gross Settlement Amount of $495,000.00, which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by Plaintiff and Participating FLSA Collective Members; (2) Collective Counsel Fees and Expenses (as defined in Article IV, Section 4); (3) Service Award; and (4) any other obligations of Defendant under this Settlement Agreement. In no event shall Defendant pay more than $495,000.00.

2.     **Method of Allocation.**   The Parties agree to apportion the Net Settlement Amount as follows: Each Participating FLSA Collective Member will be entitled to receive a share of the Net Settlement Amount, proportionate to their

estimated actual damages as compared to the total estimated damages for the entire collective. Specifically, funds will be allocated on a pro rata basis. Individual Settlement Amounts will only be distributed to Participating FLSA Collective Members who have submitted a valid and timely Consent Form.

3. **Plaintiff's Service Award.** Subject to approval from the Court, in addition to his Individual Settlement Amount, Named Plaintiff Ryan Lang will receive from the Gross Settlement Amount $15,000 for his service award as Named Plaintiff/Collective Representative for the asserted FLSA collective wage and hour claims. The service award is in recognition of his assistance to Collective Counsel and reflects his contribution to achieving the Settlement on behalf of all Participating FLSA Collective Members. Such a Service Award totals $15,000.00 and shall not be considered wages. Named Plainitff Ryan Lang shall be issued an I.R.S. Form 1099 reflecting such payment. Named Plainitff Ryan Lang shall be responsible for the payment of any and all taxes with respect to the Service Award. The failure of the Court to approve the full amount of the service award requested shall not impact the enforceability of this Settlement Agreement in all other respects.

4. **Collective Counsel's Fees and Expenses.** Subject to approval from the Court, Collective Counsel will receive from the Gross Settlement Amount attorneys' fees in the amount of one-third of the Gross Settlement Amount or $164,983.50, plus reimbursement of litigation costs and expenses in the amount of

$3,108.31. The attorneys' fees to Collective Counsel were negotiated separately from the payments to be made by Defendant to Plaintiff and Participating FLSA Collective Members. The failure of the Court to approve the full amount of the attorneys' fees and expenses requested shall not impact the enforceability of this Settlement Agreement in all other respects, and any amount not awarded in Collective Counsel Fees and Expenses shall be distributed to Plaintiff and Participating FLSA Collective Members on a pro rata basis. Under no circumstances shall any amount of the requested Collective Counsel's Fees and Expenses revert to Defendant.

5.      **Tax Treatment of Individual Settlement Amounts, Service Award, and Attorneys' Fees Payments.** For individual settlement allocations as set forth in Article IV, Section 2 above, fifty percent (50%) of the amount(s) paid to each FLSA collective Member under this Agreement shall be reported by the Settlement Administrator as wages to the appropriate taxing authorities on a Form W-2 issued to the FLSA Collective Member with his or her taxpayer identification number, and shall be subject to deductions for applicable taxes and withholdings as required by federal, state, and local law. The remaining fifty percent (50%) of the amount(s) paid to each FLSA Collective Member will be allocated to liquidated damages, interest, and/or penalties and reported by the Settlement Administrator as non-wage income to the appropriate taxing authorities on a Form 1099 issued to the FLSA

Collective Member. The Service payment will be treated as non-wage income and reported by the Settlement Administrator to the appropriate taxing authorities on a Form 1099 issued to Named Plaintiff.

6.   **Issuance of Tax Forms.** The Settlement Administrator will be responsible for issuing the appropriate W-2 and 1099 forms, and its fees and expenses in doing so shall be considered "Administrative Costs" under paragraph l(A) of this Agreement. The Settlement Administrator will notify Defendant of its employer portion of payroll taxes, which are exclusively the responsibility of Defendant and shall be paid by Defendant separately from and in addition to the Gross Settlement Fund.

## V.   INJUNCTIVE RELIEF

1.   **Change in Pay Practice.** Defendant Duplin County will change its overtime pay practices with respect to all full-time Emergency Medical Personnel, including, but not limited to, Paramedics, Emergency Medical Technicians – Basic, and Emergency Medical Technicians – Intermediates, in such a manner so as to be in full compliance with the Fair Labor Standards Act. As part of this Settlement Agreement, the Defendant County's Finance Department has been authorized and directed by the Defendant County's Board of of Commissioners to modify the County's pay plan, effective December 21, 2019, to pay the class of employees at issue in a manner which the parties agree complies with the requirements of the Fair

Labor Standards Act. Collective Counsel has been consulted about the proposed modification to the Defendant's pay practices and acknowledges and agrees that the proposed modification would comply with the Fair Labor Standards Act.

## VI.   <u>SETTLEMENT ADMINISTRATION</u>

1.     **Settlement Administrator.**     The Settlement will be administered by a third-party administrator, Angeion Group ("Settlement Administrator"). Reasonable fees and expenses of the Settlement Administrator shall be deducted from the Gross Settlement Fund.

2.     **Time for Payment of Gross Settlement Amount.** Within fifteen (15) business days after the Effective Date, Defendant shall wire the total amount of the Gross Settlement Fund to the Settlement Admnistrator.

3.     **Time for Payment of Individual Settlement Amounts, Service Award, and Attorneys' Fees and Expenses.** Within three (3) days of receipt of the Gross Settlement Fund, the Settlement Administrator shall wire the Attorneys' Fees and Costs to Collective Counsel. The Settlement Administrator will issue Collective Counsel one or more IRS Forms 1099 for the attorneys' fees and costs paid under this Agreement. Within three (3) business days after the Effective Date, the Settlement Administrator will issue the Service Award to Named Plaintiff Lang.

4.     **Collective Member Information.** Following the execution of this Agreement or 3 days from the date of submission of the unopposed motion for

approval of the Settlement, Defendant will provide Collective Counsel with updated Collective Member Information, to the extent Defendant has such information in its possession, custody, or control.

5. **Calculation of Payment Amounts for Each FLSA Collective Member.** Within ten business days of receipt of Collective Members' information from both Collective and Defendant's Counsel, the Settlement Administrator shall calculate the settlement allocations pursuant to the formulas provided in Article IV, Section 2, and the Settlement Administrator shall provide the calculations to Collective Counsel for accuracy.

6. **Distribution of Settlement Payments.** As soon as practicable and pursuant to the settlement allocations calculated in accordance with the calculations performed pursuant to Article IV, Section 2 of this Agreement, the Settlement Administrator shall issue the settlement checks (including service payment check) to the Named Plaintiff and the FLSA Collective Members.

7. **Undeliverable/Uncashed Settlement Payments.** If settlement payment sent to an FLSA Collective Member is returned as undeliverable, the Settlement Administrator shall promptly undertake reasonable steps to determine the FLSA Collective Member's current address and, if an additional address is located, to send the settlement payment to the updated address. Should any settlement

amounts remain unpaid after 180 days, any uncashed amounts will be designated to the *Cy pres* recipient Duplin County Parks and Recreation.

8.    **Costs of Settlement Administration**. Settlement Administrator shall be entitled to payment, from the Gross Settlement Amount, for all reasonable costs associated with Settlement Administrator's work under this Settlement Agreement. Settlement Administrator shall not be paid for costs above $4,000.00 absent Court approval.

## VII.   RELEASE OF CLAIMS

1.    **Claims Released by Plaintiff and Collective Members**.  In order to settle the claims against Defendant in the Action, and as consideration for Defendant's payment of the Gross Settlement Amount, which shall provide funds for the Individual Settlement Amounts, Service Award, and Collective Counsel Fees and Expenses, and the other good and valuable consideration described herein, Plaintiffs, on behalf of themselves, their heirs, trustees, executors, successors, administrators, assigns, and representatives, shall and do hereby forever release, discharge and agree to hold harmless the Defendant Releasee from any and all claims that were or could have been brought by them in the Action, whether known or unknown, through the date of this Settlement Agreement and Release, limited to any and all wage claims under federal, state, or local law for hours worked or unpaid/underpaid wages, including but not limited to any and all potential claims of

any sort under the Fair Labor Standards Act, the North Carolina Wage & Hour Act, or any state minimum wage laws, state wage payment and collection laws, state overtime statutes, state common law and unjust enrichment, or pursuant to express or implied wage contract claims up to and including the Effective Date of this Settlement Agreement and Release. To the extent any other wage claims may have been filed, Plaintiff and Collective Members agree that such claims are resolved in their entirety by this Settlement Agreement and will take such steps as are necessary to resolve any such claims with prejudice.

2. **Effective Date of Releases.** The releases herein shall become effective on the Effective Date.

## VIII. <u>NON-ADMISSION</u>

1. **Non-Admission.** Nothing in this Settlement Agreement shall be construed or deemed an admission of liability, culpability, negligence or wrongdoing on the part of Defendant, and Defendant denies any such liability. The Parties have entered into this Settlement for the purpose of compromising disputed claims and with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses. This Settlement is a settlement document and shall be inadmissible in evidence in any proceeding. The preceding sentence shall not apply to an action or proceeding to approve, interpret, or enforce this Settlement.

## IX. <u>DUTIES OF THE PARTIES</u>

1. **Duty to Support and Defend the Settlement.** The Parties agree to abide by all of the terms of the Settlement in good faith and to support the Settlement fully and to use their best efforts to defend this Settlement from any legal challenge, whether by appeal or collateral attack.

2. **Bar of Other Proceedings.** Pending a determination of whether the Settlement should be approved, the Participating FLSA Collective Members, and all persons purporting to act on their behalf, including Collective Counsel, are enjoined from commencing or prosecuting (either directly, representatively or in any other capacity) against the Defendant Releasee any action, arbitration, or proceeding in any court, arbitration forum or tribunal asserting any of the claims released in this Settlement Agreement.

## X. <u>CONSTRUCTION</u>

1. **Construction of Terms.** The Parties agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive, arms-length negotiations between the Parties and that this Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her, or its counsel participated in the drafting of this Settlement Agreement.

2. **Invalidation.** Unless otherwise stated herein, invalidation of any material portion of the Settlement shall invalidate the Settlement in its entirety,

unless the Parties shall subsequently agree in writing that the remaining provisions of the Settlement are to remain in full force and effect.

3.    **Captions and Interpretations.**    The captions of this Settlement Agreement are solely for reference and have no legal effect whatsoever and will not in any way affect the interpretation or construction of this Settlement Agreement.

## XI.    <u>MODIFICATION</u>

1.    **Modification.** This Settlement Agreement may not be changed, altered or modified, except in a writing signed by the Parties. This Settlement Agreement may not be discharged except by performance in accordance with the terms or by a writing signed by the Parties.

2.    **Integration Clause.**    This Settlement Agreement contains the entire agreement between the Parties, and all prior or contemporaneous agreements, understandings, representations and statements, whether oral or written and whether by a Party or such Party's counsel, relating to the resolution of the Action, are merged into this Settlement Agreement.    No oral understandings, statements, promises or inducements contrary to the terms of this Settlement Agreement exist. No rights under this Settlement Agreement may be waived except in writing.

## XII.    <u>MISCELLANEOUS</u>

1.    **Signatory Authorization to Settle.** The signatories to this Settlement hereby represent that they are fully authorized to enter into this Settlement and bind

the Parties to the terms and conditions of this Settlement, except that Defendant's acceptance of this Agreeement may be subject to formal approval by its Board of Commissioners.

2. **Execution in Counterparts.** This Settlement Agreement may be executed in counterparts, including, without limitation, by facsimile transmission or by transmission of a .pdf or other similar image file via e-mail. When each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, including, without limitation, those sent by facsimile transmission or by transmission of a .pdf or other similar image file via e-mail, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

3. **No Signature Required By Opt-In Plaintiffs.** Because the Opt-In Plaintiffs are so numerous, and because this Settlement Agreement and Release must be approved by the Court, it is impossible or impractical to have each Opt-In Plaintiff execute this Agreement.

4. **Non-Disparagement.** Plaintiffs and Defendant (limited to, for purposes of this clause only, Defendant's government officials, employees, and legal counsel) will refrain from disparagement of the other.

5. **Court Jurisdiction Over Settlement.** The Parties agree that any dispute regarding the interpretation of the terms of this Settlement shall be resolved

by the Court.   The Parties further agree that, upon the Effective Date, this Settlement shall be binding and enforceable pursuant to applicable law.

6.     **Governing Law.**  This Settlement shall be governed by and construed in accordance with the internal laws of the State of North Carolina without giving effect to choice of law principles.

7.     **Attorney Fees, Costs and Expenses.** Except as otherwise specifically provided for herein, each Party shall bear his, her, or its own attorney fees, costs and expenses, taxable or otherwise, incurred by them in or arising out of the Action and shall not seek reimbursement thereof from any other Party to this Settlement Agreement.

8.     **Different Facts.**  The Parties hereto, and each of them, acknowledge that, except for matters expressly represented herein, the facts in relation to the dispute and all claims released by the terms of this Settlement may turn out to be other than, or different from, the facts now known by each party and/or its counsel, or believed by such party or counsel to be true, and each party therefore expressly assumes the risk of the existence of different or presently unknown facts, and agrees that this Settlement shall be in all respects effective and binding despite such difference.

9.     **No Prior Assignments.**  The Parties represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, encumbered, or

purported to assign, transfer, or encumber, to any person or entity any portion of any liability, claim, demand, action, cause, of action or rights herein released and discharged except as set forth herein.

IN WITNESS WHEREOF, the Parties and their counsel have executed this Stipulation on the date below their signatures or the signature of their representatives. The date of the Settlement Agreement shall be the date of the latest signature.

**[THIS SPACE INTENTIONALLY LEFT BLANK]**

Case 7:18-cv-00077-BO   Document 74-2   Filed 11/25/19   Page 27 of 29

**BY PLAINTIFFS:**

Nov 25, 2019
_____
Date

Ryan Lang (Nov 25, 2019)
_____
Ryan Lang

11/25/2019
_____
Date

Gilda A. Hernandez
Charlotte Smith
The Law Offices of Gilda A. Hernandez, PLLC
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

*Counsel for Plaintiffs*

**BY DEFENDANT:**

Duplin County

By: _Davis H. Brinson, County Manager_

_Davis H. Brinson, County Manager_
PRINTED NAME

_Nov. 25, 2019_
Date

_Nov. 25, 2019_

_Norwood P. Blanchard, III_
Norwood P. Blanchard, III
Crossley McIntosh Collier Hanley & Edes, PLLC
5002 Randall Parkway
Wilmington, NC 28403
norwood@cmclawfirm.com
Telephone: (910) 762-9711

*Attorney for Defendant*